HICKMAN et al. v. FERGUSON et al.

(Court of Civil Appeals of Texas. Austin. Feb. 11, 1914. Rehearing Denied March 25, 1914.)

1. ADVERSE POSSESSION (§ 60*)—TEN-YEAR LIMITATIONS.

Plaintiff's remote grantor fenced and cultivated farms on a certain league, one of about 125 and one of 175 acres, and in 1843 built houses and barns thereon and occupied the houses by tenants or in person from 1843 to 1865, during which time he claimed all of the league as his own property, and never acknowledged as a cotenant another who purchased a part of the land from a common grantor, and probably never knew of him. *Held*, that he acquired title under the ten-year statute of limitations.

[Ed. Note.—For other cases, see Adverse Possession, Cent. Dig. §§ 282–312, 323, 328; Dec. Dig. § 60.*]

2. TENANCY IN COMMON (§ 3*)—SEVERAL OWNERS.

While one who accepted a deed to a one-half undivided interest from a grantor claiming the entire tract would be presumed to be a cotenant with his grantor or the latter's transferee of the remainder, if his grantor only claimed a half interest, and the remaining half was claimed adversely by several others of whose claims such grantee had actual and constructive notice, he was not a tenant in common with each of these claiming the remaining half, nor was he, as a matter of law, a tenant in common with the one having the best title to such half.

[Ed. Note.—For other cases, see Tenancy in Common, Cent. Dig. §§ 5–17; Dec. Dig. § 3.*]

3. TENANCY IN COMMON (§ 3*)—NECESSITY OF AGREEMENT.

Two persons who acquire an interest in land at different times by different instruments, without any understanding with each other as to the nature of their holdings, are not tenants in common, though they both hold under the same title.

[Ed. Note.—For other cases, see Tenancy in Common, Cent. Dig. §§ 5–17; Dec. Dig. § 3.*]

4. TENANCY IN COMMON (§ 4*)—EVIDENCE.

Evidence in a suit for land *held* to show that the person under whom plaintiffs claimed, who then only held a conveyance for an undivided half interest, did not enter upon land as a cotenant of another, who held under a prior conveyance of the entire league from a common grantor.

[Ed. Note.—For other cases, see Tenancy in Common, Cent. Dig. § 4; Dec. Dig. § 4.*]

5. LIMITATION OF ACTIONS (§ 44*) — REAL PROPERTY—ACCRUAL OF ACTION.

A cause of action against one who entered upon land under an adverse claim accrued when the entry was made.

[Ed. Note.—For other cases, see Limitation of Actions, Cent. Dig. §§ 220–230, 232; Dec. Dig. § 44.*]

Appeal from District Court, Liberty County; L. B. Hightower, Judge.

Action by James E. Ferguson and others against P. F. Hickman and others. From a judgment for plaintiffs, defendants appeal. Affirmed.

H. E. Marshall, of Liberty, for appellants. Stevens & Stevens, of Liberty, for appellee.

### Findings of Fact.

JENKINS, J. This is a suit by appellees to recover 1,000 acres of land out of the southwest corner of the Jose D. Martinez league No. 9 in Trinity county, Tex. Appellees were the owners of what is designated in the briefs of the parties as the Davis and Hardin titles, and appellants were the owners of what is designated as the Walling title.

### The Davis Paper Title.

(1) On September 7, 1832, Martinez, having previously applied to the proper officer of the government of Coahuila and Texas for a grant of 11 leagues of land, entered into a written agreement with Adolph Stern and Charles S. Taylor, in consideration of $200 cash and the assumption by them of all amounts due the government, to sell to them said 11 league grant "and to transfer in their favor the corresponding document as soon as he has obtained possession of same," or, in other words, to make them a deed as soon as the grant is finally confirmed to him. This instrument was recorded in Liberty county October 23, 1902.

(2) On April 14, 1833, Stern for himself and as agent for "his partner, Chas. S. Taylor," appointed William Hardin as their agent to obtain the final title from the government to said 11 leagues, and in consideration of $1,000 cash agreed to "convey and transfer to the said Hardin the aforesaid writ of obligation of sale, with all its obligations, rights, and actions which in it is expressed by both parties." This refers to his contract with Martinez. This instrument does not appear to have been recorded in Liberty county. No power of attorney was shown from Taylor to Stern.

(3) The final title to the 11 leagues was

issued to Wm. Hardin, as attorney in fact for Martinez, November 28, 1833.

(4) On August 9, 1837, Martinez, for the expressed consideration of $10,000 cash, conveyed to Chas. S. Taylor a one-half undivided interest in said 11 leagues of land. This deed was recorded in Liberty county, Tex., November 28, 1837, also April 19, 1844, and February 24, 1912.

(5) On April 10, 1843, Martinez conveyed a one-half undivided interest in said 11 leagues to James Davis, which deed was recorded in Liberty county, Tex., April 27, 1843, and on November 29, 1887.

(6) On December 12, 1850, Martinez made a second deed to James Davis for 5½ leagues, an undivided half interest in said 11 leagues, which recites that the grantor had theretofore sold the other undivided interest in said 11 leagues to Chas. S. Taylor. Recorded in Liberty county, May 30, 1853. We construe this deed to be supplemental to and explanatory of the first-mentioned deed from Martinez to Davis, and that the two were intended to be taken together, as conveying to Davis a one-half undivided interest in said 11 leagues of land.

(7) On April 10, 1843, Chas. S. Taylor and H. Washington on the one part and James Davis on the other part executed to each other a partition deed to said 11 leagues of land, by the terms of which all of league No. 9 was conveyed by Taylor and Washington to Davis in severality. It does not otherwise appear that H. Washington ever had any interest in the lands mentioned in the deed of partition. This deed was recorded in Liberty county, Tex., February 13, 1895.

(8) It was further shown that appellees owned whatever title was acquired by James Davis and his heirs, and whatever title was acquired by Wm. Hardin and his heirs, and also whatever title, if any, was acquired by Davis under the statute of limitations which were pleaded by appellees herein.

## The Walling Title.

(9) On November ——, 1837, Martinez conveyed to Jesse Walling all of league No. 9 of the said 11-league grant. This deed was recorded in Liberty county on November 6, 1837. Appellants by mesne conveyances are the owners of the Walling title of 1,000 acres out of the southwest corner of said league No. 9.

(10) The records of Liberty county were destroyed by fire December 11, 1874.

## Facts as to Limitation.

James Davis fenced and cultivated two farms on league No. 9, one of about 125 acres and one of about 175 acres, and also built houses, barns, and lots on said farms in 1843, and occupied said houses, part of the time in person and part of the time by tenants, from 1843 to and including 1865, during all of which time he claimed all of said league

No. 9 as his own and adversely to every one else.

The first deed in appellants' chain of title subsequent to the deed from Martinez to Jesse Walling is from the executors of the will of said Walling, who died in Rusk county, Tex., August 4, 1867, which will and the deed from the executors, were filed for record in Liberty county, Tex., November 3, 1884. Said deed was executed October 15, 1884.

Several witnesses who lived in Liberty county from 1843, 1844, 1845, and 1850 to the date of the trial hereof (August 26, 1912), and also some who lived in Polk county during the same period in which latter county James Davis lived a part of said time, testified that they never knew or heard of such a person as Jesse Walling; and we find that James R. Davis probably never knew Jesse Walling, and never in fact acknowledged him as a cotenant of said league No. 9.

The trial court instructed a verdict for the appellees, and judgment was rendered accordingly.

## Opinion.

We affirm the judgment of the trial court for the reason that the Hardin title, which is owned by the defendants in error, is the superior legal title to the land in controversy. For a full discussion of this title, see Surghenor v. Taliaferro, 98 S. W. 648.

[1] We sustain the judgment of the trial court for the further reason that the undisputed evidence shows that James Davis, under whom appellees claim, acquired title, independent of the Hardin title, under the ten years' statutes, as shown by our findings of fact herein.

It is contended by appellants that inasmuch as Davis entered upon the land in 1843, under a deed conveying to him only an undivided one-half interest, and the records of Liberty county then showed that Walling had a deed from Davis, grantor for the entire tract, Davis was the cotenant of Walling, and that his possession cannot be construed as adverse to Walling, unless it be shown that Davis afterwards repudiated Walling's title, and that notice of such repudiation was brought home to Walling.

[2] We do not think that Davis was ever the cotenant of Walling. As to whether a person who enters upon land under a deed conveying an undivided interest is the cotenant of any particular person claiming the remaining interest will depend upon the circumstances of the case. If he accepts a deed to, say, a one-half undivided interest from some one claiming the entire tract, it would be presumed that he was the cotenant of his grantor and of his assignee, should his grantor afterwards convey his remaining interest in the land. But suppose his grantor claimed only a half interest, and there were a number of other persons each claiming the

remaining half : interest adversely to each other, and he had both actual and constructive notice of their respective claims, it could not be held that he was a tenant in common with all of them and holding for each of them, nor, as a matter of law, that he was a tenant in common with the one having the best title. He might by agreement with one of the claimants, who in fact had no title, enter and hold possession as tenant in common with such claimant.

[3] Where two parties acquire an interest in land at different times and by different instruments, without any agreement or understanding with each other, though under the same title, they do not thereby become tenants in common. Roberts v. Thorn, 25 Tex. 737, 78 Am. Dec. 552; Ripptoe v. Dwyer, 49 Tex. 505; Dwyer v. Ripptoe, 72 Tex. 534, 10 S. W. 668.

[4] The deed to Walling conveys the entire tract; the deed to Davis conveys a half interest. Had Walling taken possession, it could not be contended that he did so as the cotenant of Davis. We think it is equally clear that Davis did not enter as the cotenant of Walling. The fact that Walling's deed conveyed to him the entire tract, and that Davis, having a deed to a one-half interest, subsequently purchased the other half interest, not from Walling or his assignee, but from a party claiming adversely to Walling, clearly indicates that their claims were adverse to each other. It is true that, as Davis had a deed to only a half interest when he took possession, there is a reasonable presumption that he was holding as the cotenant of some one. But of whom? Some one who was not claiming adversely to him. Who this party was is clearly shown by the second deed made to Davis, by Martinez, wherein it is recited that his grantor, Martinez, had previously conveyed the other half interest to Taylor. This is confirmed by the deed of partition between Taylor and Washington on the one part and Davis on the other part. Presumably Washington had acquired a portion of Taylor's interest; when or how does not appear and is immaterial.

The possession of one claiming an undivided interest in land is adverse to all the world except his cotenant, and as against any one, except such. cotenant, ten years' actual and peaceable possession will give him a good title. The language of the statute is: "Any person who has the right of action for the recovery of any lands, tenements or hereditaments against another having peaceful and adverse possession thereof, cultivating, using or enjoying the same, shall institute his suit therefor within ten years next after his cause of action shall have accrued, and not afterwards." R. S. art. 5675.

[5] Walling's cause of action accrued when Davis entered upon the land in 1843, and Davis' claim to the extent of the boundaries described in the instrument under which he held became a perfect title as against Walling in 1853. R. S. art. 5679. Davis acquired the undivided interest of his cotenant Taylor by virtue of the partition deed hereinabove referred to, April 10, 1843. Craig v. Cartwright, 65 Tex. 421, 423.

For the reasons stated, the judgment of the trial court is affirmed.

Judgment affirmed.